541 S.E.2d 310

**STATE of West Virginia, Plaintiff Below, Appellee,**

**v.**

**Bobby Lee NICHOLS, Defendant Below, Appellant.**

No. 26009.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Dec. 3, 1999.

Dissenting Opinion of Justice Maynard Dec. 15, 1999.

Franklin D. Cleckley, Morgantown, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

DAVIS, Justice:

Bobby Lee Nichols, appellant and defendant below (hereinafter referred to as "Mr. Nichols"), was convicted by a jury for the crime of third offense DUI. Mr. Nichols was also convicted of driving on a suspended license. The circuit court sentenced Mr. Nichols to one to three years confinement for the DUI conviction. The circuit court also sentenced Mr. Nichols to six months confinement for driving on a suspended license. The sentences ran concurrently. On appeal, Mr. Nichols argues two assignments of error. Mr. Nichols first contends that the trial court erred by permitting opinion testimony by lay witnesses. Next, Mr. Nichols asserts that the trial court erred by admitting into evidence Mr. Nichols prior DUI convictions.[1] Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we reverse the decision of the Circuit Court of Roane County.

1. An amicus brief was filed on behalf of the West Virginia Prosecuting Attorneys Association, seeking affirmation of the trial court's ruling only as to the prior DUI convictions.

2. Deputy Cole testified that he smelled a strong odor of alcohol in the car. He also testified that the windshield on the driver's side of the car was cracked. Hair fragments were found on the broken windshield.

I.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of April 28, 1997, a 1990 Pontiac Grand Prix struck a tree on the property of Mr. Ernest Summerville near Route 36 in Roane County. Upon hearing the accident, Mr. Summerville walked outside and observed Mr. Nichols standing alone at the rear of the car. Mr. Summerville then returned inside his home.

Shortly after the accident, Deputy Sheriff L. Todd Cole and Trooper Rick Hull responded to the accident scene. When the officers arrived, Mr. Nichols was not at the accident site. Deputy Cole searched the car and found documents containing the name "Bobby Nichols."[2] While investigating the accident scene, the officers received a call from a local wrecker company. Mr. Nichols had requested that his car be towed. The call from Mr. Nichols was made from the home of Mr. Leonard Cottrell.

The officers proceeded to the home of Mr. Cottrell. Upon arriving, the officers were told that Mr. Nichols was taken to the home of Al Nichols. The officers then proceeded to the home of Al Nichols where they found Mr. Nichols. Deputy Cole testified that he detected a strong odor of alcohol on Mr. Nichols and that Mr. Nichols' eyes were red and glassy. Additionally, Deputy Cole observed an open wound on Mr. Nichols' head. A field sobriety test was administered to Mr. Nichols. He failed the test. The officers then placed Mr. Nichols under arrest.[3]

A trial was subsequently held on June 2, 1998. Mr. Nichols presented evidence to show that he was not the driver of the car. Dennis Mullins, Jr. testified that he was driving the car at the time of the accident.[4] Mr. Mullins testified that Mr. Nichols was a pas-

3. Mr. Nichols was transported to the accident scene. He was identified by Mr. Summerville as the person seen at the accident site. In addition, a car key found in Mr. Nichols' pocket was used to turn on the ignition switch of the wrecked vehicle.

4. Mr. Nichols is the uncle of Mr. Mullins.

senger in the car when it wrecked. According to Mr. Mullins, after the accident Mr. Nichols became angry. So, Mr. Mullins left the scene of the accident. Mr. Nichols' testimony was consistent with the testimony of Mr. Mullins.

The State presented two witnesses, Ms. Ruth Pinson and Mr. Denzil Mace, both of whom are neighbors of Mr. Summerville. Ms. Pinson and Mr. Mace testified that they saw only Mr. Nichols at the accident scene. Both witnesses believed that Mr. Nichols was the driver of the car. On June 3, 1998, the jury returned a guilty verdict for third offense DUI. The jury also returned a guilty verdict against Mr. Nichols for driving while his license was revoked. The circuit court sentenced Mr. Nichols on September 14, 1998, to one-to-three years confinement for the DUI conviction, and six months confinement for driving on a suspended license. It is from the circuit court's sentence that Mr. Nichols now appeals.

## II.

### STANDARD OF REVIEW

■ The two issues raised on appeal by Mr. Nichols concern the admission of certain evidence by the trial court. It is a well established principle of law in West Virginia that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion[.]" *State v. Louk,* 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983). In syllabus point 6 of *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983), this Court held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." *Accord State v. Crabtree,* 198 W.Va. 620, 626, 482 S.E.2d 605, 611 (1996) ("Our review of a trial court's ruling to admit or exclude evidence [is] premised on a permissible view of the law, [and] is only for an abuse of discretion"). We have also ruled that a "[a] judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Syl. Pt. 11, *State v. Wade,* 200 W.Va. 637, 490 S.E.2d 724 (1997).

## III.

## DISCUSSION

### A. The Admission of Opinion Testimony by a Lay Witness

Mr. Nichols first contends that the trial court committed reversible error by allowing two lay witnesses to express an opinion as to whether they believed Mr. Nichols was driving the car at the time of the accident. Over Mr. Nichols' objections, the following exchange occurred between the prosecutor and Ms. Pinson:

Q. Ma'am again, let me ask you the question. Do you have an opinion who was driving that vehicle that night?

A. Common sense would tell you it had to be Bobby. The driver's side windshield was busted and his head was cut up. And there was no one else around.

Additionally, the prosecutor asked Mr. Mace the following:

Q. Do you know who was driving the automobile that evening that was involved in that accident?

A. I assumed it was him. There was no other—no other people around the vehicle than him.

■ Mr. Nichols argues that the opinion testimony by Ms. Pinson and Mr. Mace fails to comply with Rule 701 of the West Virginia Rules of Evidence. As a general rule, a lay witness must confine his or her testimony to a report of the facts. A lay witness may testify in the form of inferences or opinions only when from the nature of the subject matter no better or more specific evidence can be obtained. *See United States v. Fowler,* 932 F.2d 306, 312 (4th Cir.1991) (finding requirements for admission of lay opinion satisfied). We have previously explained that "[n]ormally, opinion testimony by a lay witness is limited to opinions rationally based on the witness' perception which are helpful for a clear understanding of the witness' testimony or a determination of a fact in issue." *Evans v. Mutual Min.,* 199 W.Va.

526, 530, 485 S.E.2d 695, 699 (1997).[5] Rule 701 states:

If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.[6]

(footnote added).

■■■ We have previously explained the rule as having only a two part test; that is, whether the witness' testimony was "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *Evans v. Mutual Mining*, 199 W.Va. 526, 530, 485 S.E.2d 695, 699 (1997). *See* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6254, at 126 (1997) (recognizing the traditional two part test). However, both parties have outlined a test for analyzing three distinct factors required under Rule 701:(1) personal perception, (2) rational connection, and (3) helpfulness. We do not disagree with this approach. In fact, a few federal courts have applied the requirements of Rule 701 with such a three-part test. *See*

*Swajian v. General Motors Corp.*, 916 F.2d 31, 36 (1st Cir.1990) ("For opinion testimony of a layman to be admissible three elements must be present. First, the witness must have personal knowledge of the facts from which the opinion is to be derived. Second, there must be a rational connection between the opinion and the facts upon which it is based. Third, the opinion must be helpful in understanding the testimony or determining a fact in issue"); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 263 (5th Cir.1980) (same). Because the three-part test is a workable explanation of Rule 701, we believe the test has a practical value for trial courts and therefore hold that in order for a lay witness to give opinion testimony pursuant to Rule 701(1) the witness must have personal knowledge or perception [7] of the facts from which the opinion is to be derived; [8] (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue. "If these requirements are satisfied, a layman can under certain circumstances express an opinion even on matters appropriate for expert testimony." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 263 (5th Cir.1980).[9] Having adopted the three-part

---

**5.** This Court has held " '[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous.' " *State v. Haller*, 178 W.Va. 642, 647, 363 S.E.2d 719, 724 (1987), quoting Syl. Pt. 4, *Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975).

**6.** Our Rule 701 is identical to Rule 701 of the Federal Rules of Evidence. Authorization of lay opinion testimony under federal Rule 701 was adopted because "[w]itnesses often find difficulty in expressing themselves in language which is not that of an opinion or conclusion." Fed. R.Evid. 701, Advisory Committee Note on 1972 Proposed Rules.

**7.** In relation to Rule 701, our cases have used interchangeably the terms "knowledge" and "perception."

**8.** Rule 602 of the West Virginia Rules of Evidence furnishes the basis for the first prong of the test under Rule 701. *See United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir.1985)

("The perception requirement stems from F.R.E. 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact"). Unlike an expert witness, who may express an opinion about a matter within his or her expertise, a lay witness may testify only about matters within his or her personal knowledge. This principle is embodied under Rule 602, where it is expressly held that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Thus, Rule 602 prohibits a lay witness from testifying about matters that are not within the personal knowledge of the witness. *State v. Whitt* 184 W.Va. 340, 346, 400 S.E.2d 584, 590 (1990). *See also United States v. Lyon*, 567 F.2d 777, 783–84 (8th Cir.1977) (Rule 602 "excludes testimony concerning matter the witness did not observe or had no opportunity to observe").

**9.** The topics on which lay witnesses have been permitted to express an opinion include "[t]he appearance of persons or things, identity, the manner of conduct, competency of a person,

test, we proceed to utilize that test to analyze the evidence in this case.

### ■ 1. Personal Knowledge or Perception.

The first prong of the test requires that a witness have personal knowledge or perception of the facts from which the opinion is to be derived. *Evans v. Mutual Mining*, 199 W.Va. 526, 530, 485 S.E.2d 695, 699 (1997) (lay opinion testimony must be "based on the witness' perception" of events).[10] Indeed, "[i]t is firmly established in this state that the opinion of a witness who is not an expert may be given in evidence if he has some peculiar knowledge concerning the subject of the opinion[.]"[11] Syl. pt. 2, *State v. Haller*, 178 W.Va. 642, 363 S.E.2d 719 (1987). *Accord State v. McWilliams*, 177 W.Va. 369, 378, 352 S.E.2d 120, 129 (1986); Syl. pt. 2, *Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 246 S.E.2d 624 (1978); *Moore v. Shannondale*, 152 W.Va. 549, 566, 165 S.E.2d 113, 124 (1968); Syl. Pt. 8, *Toppins v. Oshel*, 141 W.Va. 152, 89 S.E.2d 359 (1955); Syl. Pt. 4, *State v. Fugate*, 103 W.Va. 653, 138 S.E. 318 (1927). *In Washington v. Department of Transportation*, 8 F.3d 296, 300 (5th Cir. 1993) it was observed that under Rule 701 of the Federal Rules of Evidence, "speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." The "modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge[.]" *Teen–Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir.1980). "This may include the motivation or intent of another person, if the witness has an adequate basis for his or her opinion, such as personal knowledge or an opportunity to observe the surrounding circumstances." *Hart v. O'Brien*, 127 F.3d 424, 438 (5th Cir.1997).[12] Where a lay witness's testimony is based upon perceptions, which are insufficient to allow the formation of an opinion but, instead, merely expresses the witness' beliefs, then the opinion testimony should be excluded. *United States v. Cortez*, 935 F.2d 135, 139–40 (8th Cir.1991).

Mr. Nichols contends the witnesses did not satisfy the first prong of the test. He argues that the witnesses were not at the scene when the car crashed. Therefore, they did not see who was driving the vehicle. The State argues to the contrary. The State

---

feeling, degrees of light or darkness, sound, size, weight, distance and an endless number of things that cannot be described factually in words apart from inferences." Michael H. Graham, *Federal Practice and Procedure* § 6631, at 235 (1992).

**10.** "There are a number of objective factual bases from which it is possible to infer with some confidence that a person knows a given fact. These include what the person was told directly, what he was in a position to see or hear, what statements he himself made to others, conduct in which he engaged, and what his background and experience were." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir.1992).

**11.** This Court has also ruled that "[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous." Syl. Pt. 4, *Cox v. Galigher Motor Sales Co.*, 158 W.Va. 685, 213 S.E.2d 475 (1975). *See also*, Syl. Pt. 3, *State v. Haller*, 178 W.Va. 642, 363 S.E.2d 719 (1987).

**12.** In several different contexts, this Court has liberally construed the knowledge requirement for lay opinion testimony. *See, e.g.*, Syl. pt. 2, *Evans v. Mutual Mining*, 199 W.Va. 526, 485 S.E.2d 695 (1997) (concluding the owner of destroyed or damaged personal property is qualified to give lay testimony as to the value of the personal property based on his or her personal knowledge); *State v. Haller*, 178 W.Va. 642, 646, 363 S.E.2d 719, 723 (1987) (permitting a witness who is familiar with a drug and its physical or chemical properties to give an opinion of the identity of the drug); *Royal Furniture Co. v. City of Morgantown*, 164 W.Va. 400, 407, 263 S.E.2d 878, 882–83 (1980) (finding operators of retail businesses with 30 years experience had special knowledge relative to the fair market value of damaged items); *Spencer v. Steinbrecher*, 152 W.Va. 490, 497, 164 S.E.2d 710, 715 (1968) (deciding an owner may give opinion of values of personal property where it is not based on speculation); Syl. pt. 7, *Stenger v. Hope Natural Gas Co.*, 139 W.Va. 549, 80 S.E.2d 889 (1954) (allowing knowledge based opinion on issue of value of property); *Mullens v. Lilly*, 123 W.Va. 182, 190, 13 S.E.2d 634, 639 (1941) (concluding lay witnesses had knowledge to give opinion as to decedent's mental capacity); Syl. pt. 8, *Cochran v. Craig*, 88 W.Va. 281, 106 S.E. 633 (1921) (permitting knowledge based witness opinion on issue of value of property); Syl. pt. 14, *Tucker v. Colonial Fire Ins. Co.*, 58 W.Va. 30, 51 S.E. 86 (1905) (determining that owner with sufficient knowledge to speak with intelligence may give opinion of value).

asserts that because the witnesses were at the accident scene immediately following the crash, they acquired personal knowledge of what took place immediately after the crash. We believe Mr. Nichols' interpretation of the first prong of the test is misguided. All that is required is that a witness have personal knowledge of an event in litigation. In the instant case, it is clear to us that the witnesses arrived at the scene of the accident immediately after the crash. While present, the witnesses made certain observations. Those observations constitute personal knowledge of certain matters pertaining to the accident in litigation. Thus, the first prong of the test is met.

2. **Rational Connection.** Under the second prong of the test, there must be a rational connection between the opinion and the facts upon which the opinion is based. Federal courts have acknowledged that federal Rule 701, like our rule 701, "specifically permits lay opinion testimony if those opinions are rationally based on the perception of the witness[.]" *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir.1997). The Fifth Circuit Court of Appeals has interpreted the rational connection requirement to mean that, while a lay witness might express an opinion that requires personal knowledge, "the opinion must be one that a normal person would form from those perceptions." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir.1997). *Accord United States v. Figueroa–Lopez*, 125 F.3d 1241, 1244–46 (9th Cir.1997); *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 351 (8th Cir.1994); *United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir.1993); *United States v. Fowler*, 932 F.2d 306, 312 (4th Cir.1991); *Swajian v. General Motors Corp.*, 916 F.2d 31, 36 (1st Cir.1990); *Williams Enterprises v. Sherman R. Smoot Co.*, 938 F.2d 230, 233–34 (D.C.Cir.1991); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 263 (5th Cir.1980).[13] "The opinion or inference must be one that a rational person would draw based on the observed facts. This requirement reflects

the common law objection to opinion testimony based on the superfluousness of the testimony." Michael D. Blanchard & Gabriel J. Chin, *"Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Indentification [sic] of Indescript White Powder in Narcotics Prosecutions,"* 47 Am. U.L.Rev. 557, 576 (1998). *See* Glen Weissenberger, *Weissenberger's Federal Evidence* § 701.3, at 339 (1995) (observing that lay opinion must be one that a rational person would make from observed facts). Obviously, "[w]hen a witness has not identified the objective bases for his opinion, ... there is no way for the court to assess whether it is rationally based on the witness's perceptions[.]" *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir.1992).

Mr. Nichols contends that the second prong was not satisfied for two reasons. First, an unknown time interval between the point of the accident and the arrival of the witnesses occurred. Mr. Nichols asserts that during this unknown time interval, the witnesses had no knowledge of who was present at the scene and who left before the witnesses actually arrived. Second, Mr. Nichols contends that, because someone could have been present at the scene and left before the witnesses arrived, "the opinion given was no more than uninformed speculation." The State argues that the second prong was satisfied because the facts observed by the witnesses were rationally connected to the opinion rendered. We agree with the State.

Mr. Nichols correctly argues that during the unknown time interval between the accident and the arrival of Ms. Pinson and Mr. Mace, someone involved in the accident could have fled the scene. Mr. Nichols presented evidence suggesting someone else was at the scene who drove the car and who fled after the accident. However, the veracity of that evidence was left for jury determination. Ms. Pinson and Mr. Mace testified to seeing only Mr. Nichols at the accident scene. They observed him placing something in the

---

**13.** " 'While the ... rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience.' " *United States v. Oliver*, 908 F.2d 260, 264 (8th Cir.1990) (quoting *Batsell v. United States*, 217 F.2d 257, 262 (8th Cir.1954)).

trunk of the car. Both witnesses testified to seeing the cracked windshield and to noticing a cut on Mr. Nichols' head. Based upon this knowledge the witnesses could rationally conclude that Mr. Nichols was the driver of the car at the time of the accident.

■ **3. Helpful In Understanding Testimony.** Under the third prong of the test the opinion must be helpful in understanding the testimony or determining a fact in issue. In *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir.1997), the court held "[e]ven when a lay opinion is rationally based upon objective facts, it may still be inadmissible if it does not help the jury to understand the witness' testimony or to decide a fact in issue." "In other words, where the jury is capable of drawing their own conclusions, the lay witness's testimony is unhelpful and thus should not be permitted." Blanchard & Chin, *Identifying the Enemy in the War on Drugs*, 47 Am. U.L.Rev. at 611 n. 235. The helpfulness requirement is designed to provide "assurance against the admission of opinions which would merely tell the jury what result to reach." *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir.1992). Therefore, if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by [Rule 701]." Fed.R.Evid. 701, Advisory Committee Note on 1972 Proposed Rules. Similarly, we have long held that

> When the opinion of a witness, not an expert, is offered in evidence, and he is no better qualified than the jurors to form an opinion with reference to the facts in evidence and the deductions to be properly drawn from such facts, his opinion evidence is not admissible.

Syl. pt. 4, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960). It is generally acknowledged that "[l]ay opinions are not helpful when the jury can readily draw the necessary inferences and conclusions without the aid of the opinion." *Lynch v. City of Boston*, 180 F.3d 1, 17 (1st Cir.1999). *Accord United States v. Ness*, 665 F.2d 248, 249 (8th Cir. 1981); *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir.1980); *United States v. Southers*, 583 F.2d 1302, 1306 (5th Cir.1978).

"Therefore, an opinion is 'helpful' to the trier of fact ... if it aids or clarifies an issue that the jury would not otherwise be as competent to understand." *Lauria v. National R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir.1998). *See also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 109 S.Ct. 439, 450 102 L.Ed.2d 445 (1988) ("Rule 701 permits ... a lay witness to testify in the form of opinions ... when testimony in that form will be helpful to the trier of fact"); *Government of V.I. v. Knight*, 989 F.2d 619, 629 (3d Cir.1993) (As long as the "circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact"); *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir.1982) ("Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion").

Mr. Nichols asserts that the third prong was not satisfied because the jury could "readily draw the necessary inferences and conclusions without the aid of an opinion." The State contends that the third prong was satisfied because "[a] foundation was laid by the State in its questioning of the witnesses to clearly show that the witnesses had sufficient perception to form an opinion that would be helpful to the jury." We disagree with the State's position.

The "helpfulness" element of the Rule 701 test is not intended to permit lay witnesses to given opinions on every observation. *See United States v. Hoffner*, 777 F.2d 1423, 1426 (10th Cir.1985) ("Although most courts opt for the broad admissibility of lay opinion, that does not mean that all such testimony ought to be indiscriminately admitted"). Such an approach would allow lay witnesses in all criminal cases to act as the "thirteenth" juror. The helpfulness element seeks to clarify for the jury a factual issue. We discern no inherent difficulty in the jury being able to decide whether the observations made by Ms. Pinson and Mr. Mace, which were properly admitted into evidence, could reasonably lead to the conclusion that Mr. Nichols was driving the car at the time of the accident.

The State argued that any error in allowing lay opinion testimony by Ms. Pinson and Mr. Mace was harmless error. We disagree. Mr. Nichols' sole defense was that another person was driving the car. That person fled the accident scene. The opinion testimony of Ms. Pinson and Mr. Mace was directed to the defense. This Court indicated in syllabus point 4 of *State v. Blake,* 197 W.Va. 700, 478 S.E.2d 550 (1996), in part, that

> Although erroneous evidentiary rulings alone do not lead to automatic reversal, a reviewing court is obligated to reverse where the improper [in]clusion of evidence places the underlying fairness of the entire trial in doubt or where the [in]clusion affected the substantial rights of a criminal defendant.[14]

(footnote added).

We are concerned that the improper admission of opinion testimony in this case has placed the underlying fairness of the judgment in doubt.[15] "The danger here is that the jury could [have] easily accord[ed] too much weight to the pronouncement of [the] lay witness[es.]" *United States v. Ness,* 665 F.2d 248, 250 (8th Cir.1981). We must, therefore, conclude that "[t]he admission of lay opinion testimony [in this case] was an abuse of discretion." *Swajian v. General Motors Corp.,* 916 F.2d 31, 36 (1st Cir.1990).

### B. Admission of Evidence of Prior DUI Convictions

**1. Stipulation.** Mr. Nichols' second assignment of error is that the trial court should have precluded the State from introducing into evidence Mr. Nichols' two prior DUI convictions.[16] Mr. Nichols stipulated to the two prior DUI convictions. However, the circuit court, in reliance upon *State v. Hopkins,* 192 W.Va. 483, 453 S.E.2d 317 (1994) (Cleckley, J. dissenting), required the State to present evidence to establish the defendant's two prior convictions. Mr. Nichols now asks this Court to revisit the issue of whether it is mandatory that evidence of prior convictions be submitted to the jury in the prosecution of a subsequent DUI offense. In the seminal case *State v. Hopkins,* this

---

**14.** *See also,* Syl. Pt., 4 *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273 (1996) ("Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury. Syl. Pt. 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979)").

**15.** "An appellate court is obligated to see that the guarantee of a fair trial under Section 10 of Article III of the West Virginia Constitution is honored. Thus, only where there is a high probability that an error of due process proportion did not contribute to the criminal conviction will an appellate court affirm. High probability requires that an appellate court possess a sure conviction that the error did not prejudice the defendant." Syl. pt. 11, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

**16.** The relevant provisions of the State's DUI statutes are W. Va.Code §§ 17C–5–2(d) and (k) (1996), which provide as follows:

(d) Any person who:
(1) Drives a vehicle in this state while:
(A) He is under the influence of alcohol; or
(B) He is under the influence of any controlled substance; or
(C) He is under the influence of any other drug; or
(D) He is under the combined influence of alcohol and any controlled substance or any other drug; or
(E) He has an alcohol concentration in his or her blood of ten hundredths of one percent or more, by weight;
(2) Is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not less than one day nor more than six months, which jail term shall include actual confinement of not less than twenty-four hours, and shall be fined not less than one hundred dollars nor more than five hundred dollars.
. . . .
(k) A person violating any provision of subsection . . . (d) . . . of this section shall, for the third or any subsequent offense under this section, be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one nor more than three years, and the court may, in its discretion, impose a fine of not less than three thousand dollars nor more than five thousand dollars.

Court held that "[b]ecause evidence of the prior convictions is a necessary element of the crime charged, the evidence is admissible for jury purposes." *Id.* at 489, 453 S.E.2d at 323. Mr. Nichols seeks to have this principle of law overruled.

*Hopkins* held that prior convictions were necessary elements under the shoplifting statute. The *Hopkins* ruling was made without any analysis of how the prior shoplifting convictions were to be used. Additionally, *Hopkins* failed to discuss the necessity of their use or the prejudicial impact of their use. *Hopkins* merely cited to our decisions in *State v. Cozart*, 177 W.Va. 400, 352 S.E.2d 152 (1986), and *State v. Barker*, 179 W.Va. 194, 366 S.E.2d 642 (1988), as support for its conclusory holdings.[17]

The decision in *Cozart* involved a third offense DUI conviction. In footnote one of *Cozart* this Court summarily disposed of the defendant's argument that the trial court should not have permitted the State to introduce evidence of his prior DUI convictions. In a sweeping, nonanalytical fashion, this Court rejected the argument by stating that "where a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes[.]" *Cozart*, 177 W.Va. at 402 n. 1, 352 S.E.2d at 153 n. 1. Our decision in *Barker* also involved a third offense DUI conviction. An issue raised by the defendant in *Barker* involved admission of evidence of his prior DUI convictions. Again, this Court disposed of the issue by citing to *Cozart*

which held that a "prior conviction is admissible where it is necessary element of current offense charged or is utilized to enhance penalty." *Barker*, 179 W.Va. at 199 n. 12, 366 S.E.2d at 647 n. 12.

To place matters in perspective, *Hopkins* created, without providing any analytical discussion as to the justification for its holding, the rule of law in this State that evidence of prior convictions must be presented to the jury during the trial of the underlying offense. *Hopkins* simply referred to *Cozart* and *Barker*.[18] Neither *Cozart* nor *Barker* establish any judicial reasoning or discussion supporting the assertions in both opinions that prior convictions must be submitted to the jury. In sum, the rule of law in this State that prior convictions must be submitted to the jury is a principle of law created without any analytical support. *Hopkins*, *Cozart* and *Barker* are summations without legal foundation.

Here, Mr. Nichols seeks to have this Court adopt the rule established by the United States Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The defendant in *Old Chief* was charged with possession of a weapon by a convicted felon. One element of the offense was that the defendant had been previously convicted of a felony. The government wanted to introduce a copy of the judgment of his prior conviction, which contained the name and nature of the offense committed. The defense objected on the ground of undue prejudice. The defendant offered to stipulate to the fact that he had

---

17. *Hopkins* also referenced a per curiam opinion, *State v. Wilkinson*, 181 W.Va. 126, 381 S.E.2d 241 (1989).

18. The dissenting opinion in *Hopkins* addressed the very concerns this Court now has with the majority decision in *Hopkins*:

Allowing the admission of prior convictions in this case on the merits, ostensibly as elements, conflicts with all the policies behind Rule 404(b) of the West Virginia Rules of Evidence. Unquestionably, a jury will be more inclined to convict on the underlying charge if they know the defendant has been twice convicted of similar conduct. In order to avoid application of Rule 404(b), the majority suggests that the two prior convictions are material elements of the present crime. I emphati-

cally reject this holding as a torture of sound legal reasoning. The prior convictions are not elements of the current charge; they are elements of penalty enhancement.

*Hopkins*, 192 W.Va. at 495–496, 453 S.E.2d at 329–330 (Cleckley, J. dissenting). We are not necessarily persuaded by the dissent's characterization of prior convictions as mere "enhancements," though in the final analysis that is the effect of the use of prior convictions. From a legal standpoint, our repeat offender statute is an "enhancement" statute. *See* W. Va.Code § 61–11–19 (1943) (Repl.Vol.1997). Whereas, the prior DUI conviction statute, as discussed in the body of this opinion, is a "status" element statute.

been previously convicted of a felony. The trial court refused to permit the defendant to stipulate to the prior conviction. On appeal to the Ninth Circuit, that court affirmed the trial court's decision precluding the defendant from stipulating to a prior felony conviction. The United States Supreme Court granted certiorari as there was a split of authority on the issue among the federal circuit courts of appeal.[19]

Justice Souter, writing for the majority in *Old Chief,* held that it was error for the trial court to deny the defendant the ability to stipulate to the prior conviction. Justice Souter stated

> [i]n this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion [is] that the risk of unfair prejudice ... substantially outweigh[ed] the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available.

*Old Chief,* 519 U.S. at 191, 117 S.Ct. at 655, 136 L.Ed.2d at 594–95. In reaching its result, the opinion in *Old Chief* made a distinction between stipulations to a status element of an offense, as opposed to a stipulation to other elements of an offense. Justice Souter wrote that "proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." *Old Chief,* 519 U.S. at 191, 117 S.Ct. at 655, 136 L.Ed.2d at 594. *Old Chief* reasoned that because a status element of an offense is independent of an offense's mental and physical requirements, it was not necessary that a jury be informed of a status element. However, "a defendant's admission is, of course, good evidence." *Old Chief,* 519 U.S. at 186, 117 S.Ct. at 653, 136 L.Ed.2d at 591. We believe *Old Chief* provides the better approach for the use of prior convictions.

Therefore, we conclude that our decision in *Hopkins* and its progeny was clearly wrong.

The decision in *Old Chief* is distinguishable from the instant case insofar as the defendant in *Old Chief* wanted the name and nature of his prior offense kept from the jury. In *Old Chief,* the defendant was not seeking to keep from the jury the fact that he had a prior conviction. However, in the instant proceeding, Nichols seeks to keep the jury from learning of his prior convictions. In spite of this distinction, when a defendant offers to stipulate to the prior convictions *Old Chief* has provided the basis for some state courts to preclude the mention of a prior conviction that is a status element of the underlying offense.

For example, the Wisconsin Supreme Court addressed the issue of prior DUI conviction evidence in *State v. Alexander,* 214 Wis.2d 628, 571 N.W.2d 662 (1997). The defendant in *Alexander* was convicted of third offense DUI. On appeal, the defendant assigned error to the trial court's refusal to permit him to stipulate to his prior DUI convictions for the purpose of preventing the jury from learning of the prior offenses. The Court in *Alexander* described the legal nature of prior DUI convictions by stating that "[t]he element that the defendant has two or more prior convictions is a status element of the offense which places him or her in a certain category of alleged offenders." *Alexander,* 571 N.W.2d at 669. "Proof of a status element goes to an element entirely outside the gravamen of the offense: operating a motor vehicle with a prohibited alcohol concentration." *Id.* at 671. *Alexander* held "[a]ny evidence of the defendant's admission to his prior [DUI] convictions has little probative value as to whether the defendant was operating a motor vehicle with a prohibited alcohol concentration." *Id.* at 669.

Evidence of prior convictions may lead a jury to convict a defendant for crimes other than the charged crime, convict because

---

**19.** *See United States v. Breitkreutz,* 8 F.3d 688 (9th Cir.1993) (Government may reject stipulation); *United States v. Burkhart,* 545 F.2d 14 (6th Cir.1976); (recognizing a right on the part of the Government to refuse an offered stipulation); *United States v. Smith,* 520 F.2d 544 (8th Cir. 1975) (stipulation may be rejected). *But see,*

*United States v. Wacker,* 72 F.3d 1453 (10th Cir. 1995) (permitting stipulation); *United States v. Jones,* 67 F.3d 320 (D.C.C.A.1995) (same); *United States v. Tavares,* 21 F.3d 1 (1st Cir.1994) (same); *United States v. Poore,* 594 F.2d 39 (4th Cir.1979) (same).

a bad person deserves punishment rather than based on the evidence presented, or convict thinking that an erroneous conviction is not so serious because the defendant already has a criminal record.

*Id.* at 668 (citations omitted). Such evidence had no place in the prosecution, "other than to lead the jurors to think that because the defendant has two prior convictions, suspensions or revocations, he was probably driving while intoxicated on the date in question." *Id.* at 671. The Court in *Alexander* reasoned that

> [w]here prior convictions is an element of the charged crime, the risk of a jury using a defendant's prior convictions as evidence of his or her propensity or bad character is great. And where the prior offense is similar or of the same nature or character as the charged crime, the risk of unfair prejudice is particularly great.

571 N.W.2d at 668 (citation omitted). Therefore,

> [t]he evidence of the defendant's prior convictions, suspensions or revocations should be excluded and the status element not submitted to the jury because the probative value of the defendant's admission is

substantially outweighed by the danger of unfair prejudice to the defendant.

*Alexander,* 571 N.W.2d at 669. In reaching this result, the decision recognized that a defendant's "admission dispenses with the need for proof of the status element, either to a jury or to a judge." *Id.* at 668.

*Alexander* is not alone in using *Old Chief* as the basis for excluding evidence of prior convictions that are status elements of an offense. In *Brown v. State,* 719 So.2d 882 (Fla.1998), the court held

> consistent with *Old Chief,* when a criminal defendant offers to stipulate to [the prior DUI convictions], the Court must accept that stipulation, conditioned by an on-the-record colloquy with the defendant acknowledging the underlying prior [ ] conviction(s) and acceding to the stipulation. The State should also be allowed to place into evidence, for record purposes only, the actual judgment(s) and sentence(s) of the previous conviction(s) used to substantiate the prior [conviction] element of charge.

*Brown,* 719 So.2d at 884. In fact, our research has revealed that a majority of courts which have addressed the issue require trial courts to permit defendants to stipulate to prior convictions that are status elements of an offense.[20]

---

**20.** *See State v. Lee,* 266 Kan. 804, 977 P.2d 263 (1999) (finding that the district court's rejection of the defendant's offer to stipulate was an abuse of discretion and that proof of defendant's status as a convicted felon was adequately shown through a stipulation); *State v. Harvey,* 318 N.J.Super. 167, 723 A.2d 107 (1999) (holding that a defendant's admission to prior conviction as element of current offense bars disclosing the nature of prior conviction); *Johnson v. State,* 751 So.2d 30 (Ala.Crim.App.1999) (reversing conviction where defendant was not allowed to stipulate to prior DUI convictions); *People v. Hall,* 67 Cal.App.4th 128, 79 Cal.Rptr.2d 690 (1998) (concluding that defendant who is charged with carrying a concealed weapon in a vehicle is entitled to stipulate to the truth of a prior conviction which is alleged for purposes of elevating the present offense from a misdemeanor to a felony, and defendant may thereby preclude jury from learning of the prior conviction); *State v. Johnson,* 90 Wash.App. 54, 950 P.2d 981 (1998) (finding error not to allow defendant to stipulate to prior offense); *State v. Faison,* 128 N.C.App. 745, 497 S.E.2d 111, 113 (1998) (indicating *Old Chief* would be followed, in a proper case, where a defendant offered to stipulate to prior convictions); *People v. District Court, City and County of Denver,* 953 P.2d 184 (Colo.1998) (holding that

defendant can offer to stipulate that he has been convicted of offense that satisfies prior felony element without identifying particular felony conviction); *Ross v. State,* 950 P.2d 587 (Alaska App. 1998) (approving of bifurcation in DUI prior conviction cases) *Sams v. State,* 688 N.E.2d 1323 (Ind.Ct.App.1997) (holding defendant allowed to stipulate to prior DUI convictions). *State v. Saul,* 434 N.W.2d 572 (N.D.1989) (finding that, where defendant stipulated to prior convictions, submission of evidence of the prior convictions to the jury constituted prejudicial and reversible error); *State v. Cardin,* 129 N.H. 137, 523 A.2d 105 (1987) (deciding that defendant's offer to stipulate to prior conviction of driving under the influence precluded prosecution from introducing prior conviction at trial); *State v. Berkelman,* 355 N.W.2d 394 (Minn.1984) (trial court erred in refusing to accept stipulation and let defendant remove from the jury the issue of whether defendant had a prior DUI conviction). Courts that have held that a defendant cannot stipulate to prior convictions for the purpose of keeping such evidence from the jury include: *State v. Mewbourn,* 993 S.W.2d 771 (Tex.App.1999); *State v. Galati,* 193 Ariz. 437, 973 P.2d 1198 (1999); *State v. Morvan,* 725 So.2d 515 (La.Ct.App.1998); *Norris v. State,* 227

■ We are persuaded by the state and federal authorities that have relied upon *Old Chief* to preclude introduction of prior conviction evidence that constitutes a status element of an offense, when a defendant offers to stipulate to such conviction. Therefore, we hold that when a prior conviction(s) constitutes a status element of an offense, a defendant may offer to stipulate to such prior conviction(s). If a defendant makes an offer to stipulate to a prior conviction(s) that is a status element of an offense, the trial court must permit such stipulation and preclude the state from presenting any evidence to the jury regarding the stipulated prior conviction(s).[21] When such a stipulation is made, the record must reflect a colloquy between the trial court, the defendant, defense counsel and the state indicating precisely the stipulation and illustrating that the stipulation was made voluntarily and knowingly by the defendant.[22] To the extent that *State v. Hopkins*, 192 W.Va. 483, 453 S.E.2d 317 (1994), and its progeny are in conflict with this procedure they are expressly overruled.

■ Our decision to overrule *Hopkins* and its progeny is made with an earnest understanding of the doctrine of stare decisis.[23] This Court has recognized that "[s]tare decisis is the policy of the court to stand by precedent." *Banker v. Banker*, 196 W.Va. 535, 546 n. 13, 474 S.E.2d 465, 476 n. 13 (1996). However, "as a practical matter, a precedent-creating opinion that contains no extrinsic analysis of an important issue is more vulnerable to being overruled[.]" *State v. Guthrie*, 194 W.Va. 657, 679 n. 28, 461 S.E.2d 163, 185 n. 28 (1995). *Hopkins* fails to provide a logical analysis to support its determination that it is mandatory that the State be allowed to submit evidence of prior convictions to the jury. "Remaining true to an 'intrinsically sounder' doctrine ... better serves the values of stare decisis .... In such a situation 'special justification' exists to depart from the recently decided case." *Adarand Constr., Inc. v. Pena*, 515 U.S. 200, 231, 115 S.Ct. 2097, 2115, 132 L.Ed.2d 158 (1995). We simply cannot find any persuasive reasoning to continue with the precedent established in *Hopkins*.[24]

■ **2. Bifurcation.** Mr. Nichols has also suggested that should this Court reject his request to permit a stipulation to prior

---

Ga.App. 616, 489 S.E.2d 875 (1997); *State v. Anderson*, 318 S.C. 395, 458 S.E.2d 56 (Ct.App. 1995); *Glover v. Commonwealth*, 3 Va.App. 152, 348 S.E.2d 434 (1986).

**21.** Obviously, if a defendant affirmatively presents evidence to show a jury that no prior convictions exits, the state may then present appropriate evidence to rebut such testimony. In other words, the stipulation is not a license for a defendant to affirmatively inform the jury that he or she has no prior conviction involving the charged offense.

**22.** We do not require that trial courts engage in the formal requirements under Rule 11 of the West Virginia Rules of Criminal Procedure for accepting plea agreements. A stipulation to prior convictions is an acknowledgment of a fact that, in nearly every case, will be a matter that is of public record.

**23.** In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970), the United States Supreme Court enunciated three factors in stare decisis analysis which should be weighed prior to rejection of a longstanding rule. These factors are: (1) the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against unto-

ward surprise; (2) the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and (3) the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments. Although the rule of law overruled in *Hopkins* is not longstanding, we are confident that *Moragne's* principles are satisfied by our deviation from this short-lived precedent. "The binding effect of a judicial opinion on future generations should not be based on the number of. years that have passed since the opinion was issued by a Court, but rather should be found in the strength of the Court's reasoning in the opinion, and the fairness of its result." *State v. Morris*, 203 W.Va. 504, 510, 509 S.E.2d 327, 333 (1998) (Starcher, J., dissenting).

**24.** While our holding today is applicable to any retrial of Mr. Nichols, our decision has no retroactive application and cannot be used or relied upon by a defendant convicted and sentenced before the filing date of this opinion. "[A] judicial decision in a criminal case is to be given prospective application only if: (a) It established a new principle of law; (b) its retroactive application would retard its operation; and (c) its retroactive application would produce inequitable results." Syl. pt. 5, in part, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996).

DUI offenses, then the Court should permit a bifurcated trial. Although we have through this opinion required trial courts to permit such a stipulation, the issue of bifurcation is still relevant and justiciable. That is, we must also discuss in this opinion the situation that arises when a defendant does not offer to stipulate to a prior conviction that is a status element of the charged offense; yet, the defendant does not want his prior conviction(s) presented to the jury during the trial of the underlying offense. It is necessary to address this issue because to do otherwise suggests that a defendant is being forced to stipulate to a prior conviction status element or suffer having the jury be informed of the prior conviction. Such a situation affects a defendant's federal and state constitutional right against self-incrimination.

Bifurcation, from the underlying charge, of a prior conviction status element has been addressed by other courts. The Supreme Court of Idaho has adopted a mandatory bifurcation rule. *See State v. Wiggins,* 96 Idaho 766, 536 P.2d 1116 (1975). The Supreme Court of Idaho imposed a bifurcation procedure because " 'to place before a jury the charge in an indictment, and to offer evidence on trial as part of the state's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice in the minds of the jury that no instruction of the court can wholly erase." ' *Wiggins,* 96 Idaho at 768, 536 P.2d at 1118, quoting *Edelstein v. Huneke,* 140 Wash. 385, 249 P. 784 (1926). Also, the Supreme Court of Alaska has devised the following bifurcation procedure, which it described in *Ross v. State,* 950 P.2d 587, 592 (Alaska App. 1997):

In a bifurcated trial, the jury would first decide whether the defendant was guilty of driving while intoxicated on the date specified in the indictment; if the jury found the defendant guilty, the same jury would then decide the issue of the defendant's prior convictions. This solution would preserve both parties' right to a jury determination of all issues, while at the same time avoiding the potential for unfair prejudice that would otherwise be posed by evidence of the defendant's prior convictions. Moreover, this solution works equally well regardless of whether the defendant is willing to stipulate to the prior convictions or wishes to contest them.

*See also Dedic v. Commonwealth,* 920 S.W.2d 878 (Ky.1996) (bifurcation required); *Barker v. State,* 52 Ark.App. 248, 916 S.W.2d 775 (1996) (recognizing bifurcation); *State v. Cottrell,* 868 S.W.2d 673 (Tenn.Cr.App.1992) (permitting bifurcation). *State v. Rodriguez,* 575 So.2d 1262 (Fla.1991) (requiring bifurcation); *People v. Weathington,* 231 Cal.App.3d 69, 282 Cal.Rptr. 170 (1991) (allowing bifurcation); *State v. Baril,* 155 Vt. 344, 583 A.2d 621 (1990) (recognizing bifurcation); *Ray v. State,* 788 P.2d 1384 (Okl.Cr.1990) (recognizing statutory right to bifurcate); *People v. Smith,* 182 Mich.App. 436, 453 N.W.2d 257 (bifurcation required); *Smith v. State,* 451 N.E.2d 57 (Ind.Ct.App.1983) (requiring bifurcation). In fact, our research has uncovered only a minority of jurisdictions that prohibit bifurcation in the context of evidence of prior DUI offenses. *See State v. Lugar,* 734 So.2d 14 (La.App. 1 Cir.1999); *State v. Superior Court,* 176 Ariz. 614, 863 P.2d 906 (1993).

 However, we do not believe that it is necessary to impose a mandatory bifurcation [25] procedure on trial courts whenever a defendant wishes to contest an alleged prior conviction that is a status element of the offence for which he or she is being tried. Therefore, a defendant who has been charged with an offense that requires proof of a prior conviction to establish a status element of the offense charged, and who seeks to contest the existence of an alleged prior conviction, may request that the trial court bifurcate the issue of the prior conviction from that of the underlying charge and hold separate jury proceedings for both matters. The decision of whether to bifurcate these issues is within the discretion of the trial court. In exercising this discretion, a trial court should hold a hearing for the

---

**25.** In the context of a prosecution for first degree murder, this Court established discretionary bifurcation on the issue of guilt and mercy. *See* Syl. Pt. 4, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996) ("A trial court has discretionary authority to bifurcate a trial and sentencing in any case where a jury is required to make a finding as to mercy").

purpose of determining whether the defendant has a meritorious claim that challenges the legitimacy of the prior conviction. If the trial court is satisfied that the defendant's challenge has merit, then a bifurcated proceeding should be permitted. However, should the trial court determine that the defendant's claim lacks any relevant and sufficient evidentiary support, bifurcation should be denied and a unitary trial held. We further hold that at a hearing to determine the merits of a defendant's challenge of the legitimacy of a prior conviction pursuant to Syllabus point 4 of *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), the defendant has the burden of presenting satisfactory evidence to show that the alleged prior conviction is invalid as against him or her.[26]

We believe the bifurcation procedure outlined in this opinion is fundamentally fair to all parties. Trial courts will not be forced to hold meritless bifurcated trials. Defendants with legitimate grounds for contesting a prior conviction status element will not be forced to surrender their challenge through stipulation in order to keep the prior conviction issue from the jury. Likewise, the State has an opportunity to prove that a challenge to a prior conviction is without merit.

## V.

## CONCLUSION

In view of the foregoing, the judgment in this case is reversed and remanded for a new trial.

Reversed.

Judge FRED RISOVICH, II, sitting by temporary assignment.

Justice SCOTT did not participate.

MAYNARD, Justice, dissenting:

(Filed Dec. 15, 2000)

I dissent in this case because I do not believe the admission of lay witness opinion testimony constituted reversible error. Also,

I do not agree with the new law formulated by the majority in syllabus point 3 concerning the preclusion of evidence regarding prior convictions which constitute status elements of an offense.

The majority reverses the defendant's conviction for third offense DUI and driving on a suspended license based, in part, on the testimony of one of the witnesses to the defendant's automobile accident. Ms. Pinson testified, in part, that "[c]ommon sense would tell you it had to be [the defendant who was driving the automobile]. The driver's side windshield was busted and his head was cut up. And there was no one else around." Another witness, Mr. Mace, agreed with Ms. Pinson. The majority concludes that the introduction of this opinion evidence could have affected the verdict of the jury. I disagree. The opinion testimony of Ms. Pinson and Mr. Mace, if improper, was merely superfluous to the remainder of their testimony. The permissible testimony of these two witnesses was sufficient for the jury to conclude that the defendant was the driver of the automobile when it crashed. Therefore, I believe it is clear that the jury reached its own conclusion based on permissible testimony and was not affected by impermissible opinion testimony.

In addition, I believe the majority's creation of novel law in syllabus point 3 is an unwarranted rejection of recent precedent in violation of the doctrine of stare decisis. I also believe that the new law created by this syllabus point is bad. It seems to me that the only plausible explanation underlying the majority's reasoning is its belief that jurors are unable to properly use evidence of prior convictions. This belief also explains the majority's finding that jurors in this case could not disregard opinion testimony and decide for themselves, based on the evidence, that the defendant was the driver of the automobile. I, for one, do not share the majority's distrust of juries.

There was plenty of evidence in this case to conclude that the defendant was guilty of the charged crimes. Also, any error in the

---

26. We have imposed the burden of persuasion on a defendant seeking bifurcation in a first degree murder prosecution. *See* Syl. pt. 5, in part, *State*

*v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996) ("The burden of persuasion is placed on the shoulders of the party moving for bifurcation").

admission of evidence was harmless. Therefore, the conviction should be affirmed. Accordingly, I dissent.