# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia, Plaintiff Below, Respondent**

**vs) No. 14-0625** (Mercer County 13-F-359)

**David Allen Warburton, Defendant Below, Petitioner**

**FILED**

October 20, 2015

**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner David Allen Warburton, by counsel Steven K. Mancini, appeals the Circuit Court of Mercer County's April 30, 2014, order sentencing him to one to ten years of incarceration for burglary; one to five years of incarceration for conspiracy to commit burglary; and one to twelve months of incarceration for petit larceny. The State, by counsel Benjamin F. Yancy III, filed a response. On appeal, petitioner alleges that the circuit court committed reversible error in allowing a police officer to testify as to witnesses' prior statements.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2013, Officer K.L. Adams of the Bluefield, West Virginia, police department responded to an emergency call regarding a possible burglary and house fire. Four men and three women were present at the residence, including petitioner, Phillip Cyrus, Bruce Smith, and Timothy Lusk. Officer Adams observed that smoke was coming from the burning of copper wire in a trash can in the front yard of the residence. He observed that petitioner and Mr. Cyrus were burning the wire and covered in black soot. Officer Adams also observed a large load of scrap mental in a truck parked at the residence. The fire department was dispatched to put out the fire. Officer Adams was unable to substantiate a burglary and left the scene. Approximately an hour later, Officer Adams received a second emergency call regarding a possible burglary at a vacant residence cared for by two neighbors, Tina Lewis and Arthur Hamm. Officer Adams arrived on scene a second time and was advised by Tina Lewis that she made both of the emergency calls on which Officer Adams was dispatched, she observed petitioner and Mr. Cyrus carrying a large stove around the side of the vacant home, and that she believed that the home had been burglarized. After hearing Ms. Lewis' statements, Officer Adams then went back to speak to petitioner and Mr. Cyrus. Officer Adams observed that petitioner and Mr. Cyrus had taken showers and changed their clothes. Officer Adams escorted petitioner and Mr. Cyrus to the front of the vacant house and Ms. Lewis identified them as the two men she saw beside the vacant

house. She added that the two men were cleaner now and dressed differently than they were when she had seen them at the house before. Following the identification, Officer Adams and Mr. Hamm went inside the vacant house and observed that several items had been removed from the house or placed inside the front door, some items had been ripped out of their original places, and that most of the residential copper wire had been removed along with the light fixtures, cabinets, carpets, stoves, a bathtub, and a hot water heater. The total damage cost to the house was approximately $50,000. Thereafter, Officer Adams arrested petitioner and Mr. Cyrus. At the police station the items in petitioner's backpack were catalogued. During this process, Officer Adams found a pair of wire cutters and copper wire. Officer Adams brought in Bruce Smith and Timothy Lusk who were present at the residence and they gave statements incriminating petitioner and Mr. Cyrus as having loaded items from the vacant residence into the truck parked outside. Officer Adams then went to Brushfork Recycling where he learned that petitioner's co-defendant had been to this recycling yard on that day and had sold thirty-two pounds of copper wire.

In October of 2013, petitioner was indicted on one count of burglary, one count of petit larceny, one count of felony destruction of property, and one count of conspiracy to commit burglary. In March of 2014, after a two day trial, a jury convicted petitioner of burglary, petit larceny, and conspiracy to commit burglary. In its case-in-chief, the State presented the testimony of Officer Adams. He testified that he had investigated two separate emergency calls regarding a burglary and a possible house fire at two residences on Fourth Street. Officer Adams explained that after investigating the scene of the burglary and speaking to witnesses, he arrested petitioner and Mr. Cyrus based on his investigation and Ms. Lewis' identification of them as the two men she saw beside the vacant house. Officer Adams brought in Bruce Smith and Timothy Lusk[1] and they gave statements incriminating petitioner and Mr. Cyrus as having loaded items from the vacant residence into the truck parked outside. Initially, there was an objection by petitioner as to the State's direct-examination questions regarding the previous statements of Mr. Smith and Mr. Lusk. The circuit court sustained the objection but at a side bar warned both parties that if either brought up the previous statements of Mr. Smith and Mr. Lusk or their misdemeanor pleas that it would allow Officer Adams to explain their pleas and previous statements. On cross-examination, petitioner questioned Officer Adams regarding Smith's testimony at trial and in his previous statements to Officer Adams. The State objected to this line of questioning and the circuit court sustained the objection. The circuit court then ruled that petitioner opened the door to Officer Adams testimony as to Mr. Smith's prior statements.

The circuit court held a sentencing hearing in April of 2014 and imposed the following sentences: one to ten years of incarceration for the burglary conviction; one to five years of incarceration for the conspiracy to commit burglary conviction; and one to twelve months of incarceration for the petit larceny conviction. The circuit court ordered that petitioner's sentences for burglary and conspiracy to commit burglary run concurrently and that his sentence for petit larceny run consecutively with the concurrent sentences. The circuit court then suspended

---

[1]Bruce Smith and Timothy Lusk were later arrested for aiding petitioner and Mr. Cyrus and pled guilty to one count each of misdemeanor destruction of property. They were both placed on probation and ordered to pay $500.00 in restitution.

petitioner's sentences for burglary and conspiracy to commit burglary and placed him on probation for five years. It is from that order that petitioner appeals.

This Court previously explained that in *State v. Crabtree*, 198 W.Va. 620, 627 482 S.E.2d 605, 612 (1996) that

> '[i]nvited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

Further, "[a]n appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case." Syl. Pt. 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971).

Petitioner contends that the circuit court committed reversible error by allowing a police officer to testify at petitioner's trial as to the prior statements of witnesses. The circuit court ruled on petitioner's objection at trial that the State could not elicit hearsay from Officer Adams as to the content of Mr. Smith or Mr. Lusk's prior statements. However on cross-examination, petitioner questioned Officer Adams on Mr. Smith's inconsistent testimony and in his prior statements to Officer Adams. On redirect examination, Officer Adams testified as to Mr. Smith's previous statement to him and Mr. Smith's testimony at trial. Officer Adams also explained that he took Mr. Smith and Mr. Lusk's statements contemporaneously with his burglary investigation. We have held that "[i]t is fundamental that where the subject matter of a question has been introduced by a defendant on cross-examination, it may properly be covered on redirect." *State v. Haught*, 179 W.Va. 557, 567, 371 S.E.2d 54, 64 (1988). Accordingly, we find that the circuit court did not err by allowing Officer Adams to testify as to Mr. Smith's prior statements because petitioner questioned Officer Adams about the substance of Mr. Smith's statement on cross-examination.

Finally, even if taken as correct, the error that petitioner asserts in his appeal does not warrant the reversal of his conviction. The error was harmless in light of the other evidence presented at trial. We have previously held that "it is well settled that, '[m]ost errors, including constitutional ones are subject to harmless error analysis.'" *State v. Reed*, 218 W.Va. 586, 590, 625 S.E.2d 348, 352 (2005) (quoting *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078 (1993)). We have also consistently held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975).

> "The harmless error inquiry involves an assessment of the likelihood that the error affected the outcome of the trial. In the realm of nonconstitutional error, the appropriate test for harmlessness articulated by this Court in *State v. Atkins,*

3

163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence independently was sufficient to support the verdict and that the judgment was not substantially swayed by the error."

Syl. Pt. 13, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995).

"Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."

Syl. Pt. 2, *State v.* Atkins, 163 W.Va. 502, 261, S.E.2d 55 (1979). "A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Syl. Pt. 3, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995). (citations omitted). In order to decide whether Officer Adams' testimony was harmless error, we must evaluate his testimony in light of what the State had to prove to convict petitioner.

After reviewing the record on appeal, we find that while Officer Adams' testimony could possibly have had effect on the jury's weighing of the evidence, he did not have a substantial impact on the result of the trial. The bulk of Officer Adams' testimony concerned his response to the two emergency calls about a burglary and house fire and his investigation, arrest, and processing of the petitioner and Mr. Cyrus. Additionally, parts of Officer Adams' testimony were corroborated by other witnesses. Tina Lewis identified petitioner and Mr. Cyrus as the two men she saw beside the vacant house, carrying a stove. She also corroborated Officer Adams' observation that the petitioner and Mr. Cyrus showered and changed their clothes in the short time frame between the two emergency calls. The evidence clearly established that the vacant residence was burglarized, several items were removed or placed inside the front door, other items were ripped out of their original places, and most of the residential copper wire had been removed along with the light fixtures, cabinets, carpets, stoves, a bathtub, and a hot water heater. Officer Adams catalogued the items in petitioner's backpack and found a pair of wire cutters and copper wire sheathing therein. Accordingly, the circuit court did not commit reversible error by allowing Officer Adams to testify as to the prior statements of witnesses in light of all the other evidence presented at trial.

For the foregoing reasons, the circuit court's April 30, 2014, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: October 20, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II